FILED
CLERK, U.S. DISTRICT COURT

7/14/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: \_\_\_\_\_MMC\_\_\_\_\_ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>CHRISTOPHER MICHAEL CADMAN,<br><br>  Defendant. | No. 2:25-CR-00583-GW<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 241: Conspiracy Against Rights; 26 U.S.C. § 7206(1): Making and Subscribing to a False Tax Return; 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The United States Attorney charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1. The Los Angeles County Sheriff's Department ("LASD") was a law enforcement agency within the Central District of California. Among other responsibilities, the LASD provided municipal police services within Los Angeles County, California, through its thousands of sworn deputies.

2. Defendant CHRISTOPHER MICHAEL CADMAN, LASD Deputy 2, LASD Deputy 4, and LASD Deputy 6 were sworn law enforcement officers employed by the LASD. As LASD deputies, defendant CADMAN, LASD Deputy 2, LASD Deputy 4, and LASD Deputy 6 were subject to an oath of duty and rules of conduct. This oath and these rules prohibited LASD personnel from using their law enforcement status and related equipment for personal use or for non-legitimate law enforcement purposes.

3. Defendant CADMAN was a deputy assigned to LASD's Lakewood Station. Defendant CADMAN also served as a task force officer assigned to the Los Angeles IMPACT Task Force.

4. Defendant CADMAN knew and understood that the Constitution and laws of the United States protect the right to be free from unreasonable searches and seizures and the right to be free from deprivation of property without due process of law by one acting under color of law.

5. Eric Chase Saavedra ("Saavedra") owned and operated a company called Saavedra & Associates LLC ("Saavedra & Associates") that provided private security services for clients and often employed active LASD deputies and law enforcement officers. Defendant CADMAN worked for Saavedra & Associates as a private security guard and received cash payments in return for his services.

6. Adam Iza, also known as ("aka") "The Godfather," aka "Ahmed Faiq," aka "Diego," aka "Diego Facebook," aka "Tony Brambilla," aka "Leo" ("Iza"), was engaged in fraudulent marketing and cryptocurrency schemes and resided in Los Angeles County and Orange County, California, within the Central District of California.

2

7. Iza hired Saavedra & Associates to provide private security and made substantial payments to Saavedra and his employees, including defendant CADMAN.

8. Defendant CADMAN derived substantial gross income from security-related services, including for Iza, and used his personal bank account to receive such income.

9. The IRS was an agency of the United States Department of Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States.

10. IRS Form 1040, U.S. Individual Income Tax Return ("Form 1040"), was a form generally used by individual U.S. taxpayers to file annual income tax returns.

11. These Introductory Allegations are incorporated into each count of this Information.

COUNT ONE

[18 U.S.C. § 241]

A. OBJECT OF THE CONSPIRACY

12. Beginning on a date unknown and continuing through in or around December 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant CHRISTOPHER MICHAEL CADMAN, and others known and unknown to the United States Attorney, conspired and agreed with each other to knowingly and intentionally injure, oppress, threaten, and intimidate a person of the State of California, namely, Victim R.C., in the free exercise and enjoyment of rights secured to them by the Constitution and laws of the United States, that is, the right to be free from unreasonable searches and seizures and the right to be free from deprivation of property without due process of law by one acting under color of law.

B. MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

13. The object of the conspiracy was to be accomplished, in substance, as follows:

    a. Iza would hire active LASD deputies, including defendant CADMAN, LASD Deputy 2, and LASD Deputy 6, through Saavedra and/or Saavedra & Associates, to act as Iza's personal bodyguards and/or advisors, accompanying him 24 hours per day and seven days per week.

    b. Iza would pay large sums of money for the LASD deputies' services, including through cash payments and wire transfers to Saavedra and/or Saavedra & Associates.

    c. The LASD deputies often would carry firearms and/or brandish their LASD badges while accompanying Iza.

    d.   Iza would inform the LASD deputies about people with whom he had personal and monetary disputes, and obtain the LASD deputies' assistance in gathering information about these individuals; obtaining property from these individuals; and/or retaliating against these individuals.

    e.   Iza, the LASD deputies, and their associates would intimidate, harass, and threaten individuals identified by Iza, including by threatening violence and by causing the arrest of these individuals, including by using their official law enforcement capacities.

C.    <u>OVERT ACTS</u>

On or about the following dates, in furtherance of the conspiracy, and to accomplish the object of the conspiracy, defendant, LASD Deputy 2, LASD Deputy 6, Saavedra, and Iza, and others known and unknown to the United States Attorney, committed and caused to be committed various overt acts within the Central District of California, and elsewhere, including the following:

<u>Overt Act No. 1</u>:  In or around August 2021, Iza engaged defendant CADMAN and LASD Deputy 6 to provide security services for a party at his mansion in the Bel Air neighborhood of Los Angeles.

<u>Overt Act No. 2</u>:  On August 14, 2021, defendant CADMAN and LASD Deputy 6 provided private security at the event at Iza's mansion.

<u>Overt Act No. 3</u>:  On August 15, 2021, Iza told defendant CADMAN and LASD Deputy 6 that he was angry with Victim R.C. because the party did not go as Iza had planned.

<u>Overt Act No. 4</u>:  On August 15, 2021, defendant CADMAN told Iza that vendors were still owed money for the party, and Iza

expressed his anger with Victim R.C., who Iza believed owed the money.

<u>Overt Act No. 5:</u>  On August 16, 2021, Iza messaged defendant CADMAN asking if he would return to the mansion to work another shift of private security.  In the message, Iza told defendant CADMAN that Victim R.C. was going to return to Iza's residence that day.

<u>Overt Act No. 6:</u>  On August 16, 2021, Iza discussed with defendant CADMAN and LASD Deputy 6 that Victim R.C. was on his way to the residence.  Based on this conversation, defendant CADMAN understood that Iza was going to put Victim R.C. on the spot about the money that Iza believed Victim R.C. owed and that Iza was going to apply pressure on Victim R.C. when he arrived.

<u>Overt Act No. 7:</u>  On August 16, 2021, defendant CADMAN and LASD Deputy 6 escorted Victim R.C. to Iza's office and closed the door behind them.  Inside the office, Iza asked Victim R.C. how much money Iza was going to get back from Victim R.C.  Iza raised his voice at Victim R.C. and removed a firearm magazine and bullets from his desk drawer.

<u>Overt Act No. 8:</u>  On August 16, 2021, LASD Deputy 6 unholstered his firearm and drew his weapon to a low-ready position with the muzzle of the firearm angled at the ground in the direction of Victim R.C.  LASD Deputy 6 told Victim R.C. to take his "fucking hands out of his pockets" and walked toward Victim R.C. with his firearm at the low-ready position.

<u>Overt Act No. 9:</u>  On August 16, 2021, LASD Deputy 6 took Victim R.C.'s phone from Victim R.C. and handed it to Iza.

<u>Overt Act No. 10:</u>  On August 16, 2021, defendant CADMAN patted down Victim R.C. and searched Victim R.C.'s bags.

<u>Overt Act No. 11</u>:  On August 16, 2021, Iza accessed Victim R.C.'s phone and demanded that Victim R.C. wire $25,000 from Victim R.C.'s bank account to a bank account that Iza controlled.

<u>Overt Act No. 12</u>:  On August 16, 2021, after the bank transfer occurred, defendant CADMAN and LASD Deputy 6 escorted Victim R.C. out of the mansion without Victim R.C.'s phone.

<u>Overt Act No. 13</u>:  In August 2021, Iza paid defendant CADMAN and LASD Deputy 6 each $1,400 for their shifts during the August 14, 2021 party and the August 16, 2021 incident with Victim R.C.

<u>Overt Act No. 14</u>:  In August 2021, defendant CADMAN and LASD Deputy 6 each earned 10 percent of the total profits earned for the first month of the private security contract with Iza.

<u>Overt Act No. 15</u>:  In September 2021, defendant CADMAN spoke in person with Iza and LASD Deputy 2 about the idea of conducting a traffic stop to arrest Victim R.C.

<u>Overt Act No. 16</u>:  In September 2021, LASD Deputy 2 called defendant CADMAN, told defendant CADMAN that Victim R.C. was going to be in the Lakewood area, and asked whether defendant CADMAN would conduct a traffic stop and arrest Victim R.C.  LASD Deputy 2 informed defendant CADMAN who the car's driver would be and that the driver believed there were drugs inside the vehicle.

<u>Overt Act No. 17</u>:  On September 27, 2021, defendant CADMAN called LASD Deputy 4, who was working in the Lakewood area. Defendant CADMAN told LASD Deputy 4 that an individual was going to be in the Lakewood area with an outstanding warrant and that there were likely drugs in the car.  Defendant CADMAN asked LASD Deputy 4 to conduct the traffic stop and arrest Victim R.C.

Overt Act No. 18:   On September 27, 2021, defendant CADMAN told LASD Deputy 4 to contact LASD Deputy 2 for more information about the traffic stop and provided LASD Deputy 2's telephone number.

Overt Act No. 19:   On September 27, 2021, LASD Deputy 4 conducted the traffic stop, located drugs in the vehicle, and arrested Victim R.C.

Overt Act No. 20:   On September 27, 2021, LASD Deputy 2 messaged defendant CADMAN thanking him for facilitating the traffic stop and stating that "the kid enjoyed it."  When defendant CADMAN asked LASD Deputy 2 what he meant by this, LASD Deputy 2 explained that he brought Iza to the scene of the arrest to watch Victim R.C. handcuffed and placed in the patrol vehicle.

COUNT TWO

[26 U.S.C. § 7206(1)]

On or about February 22, 2022, in Orange County, within the Central District of California, and elsewhere, defendant CHRISTOPHER MICHAEL CADMAN willfully made and subscribed to a materially false U.S. Individual Income Tax Return, Form 1040, for the calendar year 2021, which was verified by a written declaration from defendant CADMAN that it was made under the penalties of perjury, and which defendant CADMAN filed and caused to be filed with the Internal Revenue Service, knowing the tax return was not true and correct as to every material matter contained therein, in that defendant CADMAN knew that he failed to report on the tax return approximately $40,500 in income.

## FORFEITURE ALLEGATION

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count One of this Information.

2. If so convicted, defendant shall forfeit to the United States of America the following:

   (a) All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

   (b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the convicted defendant shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//
//
//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

BILAL A. ESSAYLI
United States Attorney

*Christina Shay*

CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division

THOMAS F. RYBARCZYK
Assistant United States Attorney
Chief, Public Corruption and Civil Rights Section

MAXWELL COLL
Assistant United States Attorney
Cyber & Intellectual Property Crimes Section