FILED
CLERK, U.S. DISTRICT COURT

7/14/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ MMC _____ DEPUTY

BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorney
Cyber & Intellectual Property Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-1785
    Facsimile: (213) 894-0141
    E-mail:   maxwell.coll@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>          v.<br><br>CHRISTOPHER MICHAEL CADMAN,<br><br>      Defendant. | No. CR 2:25-CR-00583-GW<br><br>PLEA AGREEMENT FOR DEFENDANT<br>CHRISTOPHER MICHAEL CADMAN |

1.   This constitutes the plea agreement between CHRISTOPHER MICHAEL CADMAN ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the investigation of certain acts committed by defendant in furtherance of a conspiracy against rights under color of law.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.    Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a two-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with conspiracy against rights, in violation of 18 U.S.C. § 241 (Count One), and false subscription to a tax return, in violation of 26 U.S.C. § 7206(1) (Count Two).

b.    Not contest the Factual Basis agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement.

d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.    Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

3.    Defendant admits that defendant received unreported income of approximately $40,500 for the year 2021.  Defendant agrees that:

a.    Prior to sentencing or prior to December 30, 2025, whichever comes first, defendant will: (1) if requested to do so by the Internal Revenue Service ("IRS"), file amended returns for the

2

years subject to the above admissions, correctly reporting unreported income and correcting improper deductions and credits; (2) if requested to do so by the IRS, provide the IRS with information regarding the years covered by the returns; (3) pay all additional taxes and all penalties and interest assessed by the IRS on the basis of the returns; and (4) pay all additional taxes and all penalties and interest thereafter determined by the IRS to be owing as a result of any computational error(s).

b.    Nothing in this agreement forecloses or limits the ability of the IRS to examine and make adjustments to defendant's returns after they are filed.

c.    If defendant files amended returns, defendant will not, after filing the returns, file any claim for refund of taxes, penalties, or interest for amounts attributable to the returns filed in connection with this plea agreement.

d.    Defendant is liable for the tax deficiencies resulting from the failure to report this income and the fraud penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663, on the understatements of tax liability for the year 2021.

e.    Defendant gives up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

f.    Defendant will work in good faith with the IRS to enter into a closing agreement for the year 2021, which will be consistent with this plea agreement and permit the IRS to assess and collect the deficiencies in tax liabilities for the tax year 2021

3

(the "Closing Agreement").  Defendant agrees, pursuant to the Closing Agreement, that the IRS may assess and collect the fraud penalty for each year and statutory interest, on the tax liabilities, as provided by law.

g.    Within 30 days from the filing of this plea agreement, defendant will sign the Closing Agreement with the IRS, permitting the IRS to assess and collect the total sum of $11,000 for the defendant's tax year 2021, which comprises the tax liabilities, as well as assess and collect the civil fraud penalty and statutory interest, on the tax liabilities, as provided by law.

THE USAO'S OBLIGATIONS

4.    The USAO agrees to:

a.    Not contest the Factual Basis agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

NATURE OF THE OFFENSES

5.    Defendant understands that for defendant to be guilty of the crime charged in Count One of the information, that is, conspiracy against rights, in violation of Title 18, United States Code, Section 241, the following must be true: (1) there was an agreement between two or more persons to injure, oppress, threaten,

4

or intimidate a person in the free exercise or enjoyment of his or her rights secured by the Constitution and laws of the United States; here, the right to be free from unreasonable searches and seizures and the right to be free from deprivation of property without due process of law by one acting under color of law; (2) defendant knowingly became a member of the conspiracy with the intent to further the conspiracy; and (3) the victim was present in the United States.

6.    Defendant understands that for defendant to be guilty of the crime charged in Count Two of the information, that is, false subscription to a tax return, in violation of Title 26, United States Code, Section 7206(1), the following must be true: (1) defendant made and signed a tax return for the year 2021 that he knew contained false information as to a material matter; (2) the return contained a written declaration that it was being signed subject to the penalties of perjury; and (3) in filing the false tax return, the defendant acted willfully.  A matter is material if it had a natural tendency to influence, or was capable of influencing, the decisions or activities of the IRS.  A defendant acts willfully when defendant knows that federal tax law imposed a duty on defendant and defendant intentionally and voluntarily violated that duty.

                          PENALTIES AND RESTITUTION

7.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 241 (Count One) is: 10 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 26, United States Code, Section 7206(1) is: three years' imprisonment; a one-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9. Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 13 years' imprisonment; a three-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

10. Defendant understands that he will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts and charges. With respect to Count Two, the parties stipulate that the appropriate amount of restitution should be the tax deficiencies plus penalties and

6

interest set forth in the Closing Agreement referenced in paragraph 3.f. The parties have no agreement as to the applicable amount of restitution relating to Count One. The parties recognize and agree that the restitution amount could change based on facts that come to the attention of the parties prior to sentencing. The parties agree that generally such restitution payments are tax deductible against income, pursuant to 26 U.S.C. § 165(c), in the year the restitution payments are made; however, defendant understands that defendant is solely responsible for ensuring that his tax filings are accurate and in compliance with all legal requirements.

11. Defendant understands and agrees that the Court: (a) may order defendant to pay restitution in the form of any additional taxes, interest, and penalties that defendant owes to the United States based upon the counts of conviction and any relevant conduct; and (b) must order defendant to pay the costs of prosecution, which may be in addition to the statutory maximum fine stated above.

12. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

13. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could

7

result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

14. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

15. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration

8

status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

16.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 18 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

At all times relevant to this Factual Basis, defendant, LASD Deputy 2, LASD Deputy 4, and LASD Deputy 6 were sworn law enforcement officers employed by the Los Angeles County Sheriff's Department ("LASD").  As LASD deputies, defendant CADMAN, LASD Deputy 2, LASD Deputy 4, and LASD Deputy 6 were subject to an oath of duty and rules of conduct.  This oath and these rules prohibited LASD personnel from using their law enforcement status and related equipment for personal use or for non-legitimate law enforcement purposes.

Defendant was a deputy assigned to LASD's Lakewood Station. Defendant also served as a task force officer assigned to the Los Angeles IMPACT Task Force.  Defendant knew and understood that the Constitution and laws of the United States protect the right to be free from unreasonable searches and seizures and the right to be free from deprivation of property without due process of law by one acting under color of law.

Eric Chase Saavedra ("Saavedra") owned and operated a company called Saavedra & Associates LLC ("Saavedra & Associates") that provided private security services for clients and often employed active LASD deputies and law enforcement officers.  Defendant worked for Saavedra & Associates as a private security guard and received cash payments in return for his services.

***Defendant Works Private Security for Party at Adam Iza's Mansion***

In or around August 2021, Adam Iza ("Iza"), also known as ("aka") "The Godfather," aka "Ahmed Faiq," aka "Diego," aka "Diego Facebook," aka "Tony Brambilla," aka "Leo," engaged defendant and LASD Deputy 6, and other law enforcement officers, to provide private security for him.  Specifically, Iza required security for a party at his mansion residence in the Bel Air neighborhood of Los Angeles.  The party was held on the night of August 14, 2021.  Defendant and LASD Deputy 6 worked as private security guards for the event.

Iza hired Victim R.C. to plan the party.  During the party at Iza's mansion, defendant directly told Victim R.C. that he was an active police officer.

After the event ended, at around 3 or 4 a.m. on August 15, 2021, defendant, LASD Deputy 6, and Iza discussed the party and its attendees.  During these conversations, Iza expressed his anger with Victim R.C. and the event in general.  LASD Deputy 6 also told defendant that Victim R.C. had been kicked out of the party for erratic behavior.

Later that morning, while still at the residence, defendant learned that some of the party vendors were owed money for the event. Defendant told Iza that the vendors were requesting payment.  Iza

10

again expressed his anger with Victim R.C., who Iza said was supposed to have paid the vendors.

***Defendant Returns to Iza's Mansion and Confronts Victim R.C.***

The next day, on August 16, 2021, Iza messaged defendant asking if defendant would return to the mansion in Bel Air to work another shift of private security.  In the message, Iza told defendant that Victim R.C. was going to return to the residence that day.  Defendant and LASD Deputy 6 agreed to work the shift and arrived at Iza's mansion.

Upon arriving, Iza discussed with defendant and LASD Deputy 6 that Victim R.C. was on his way to the residence.  Based on this conversation, defendant understood that Iza was going to put Victim R.C. on the spot about the money that Iza believed Victim R.C. owed and that Iza was going to apply pressure on Victim R.C. when he arrived.  Defendant was carrying a firearm on his person holstered and visible during this time.  LASD Deputy 6 was also carrying a firearm holstered and visible.

When Victim R.C. arrived, defendant and LASD Deputy 6 escorted Victim R.C. to Iza's office and closed the door behind them.  Inside the office, Iza asked Victim R.C. how much money Iza was going to get back from Victim R.C.  Iza raised his voice at Victim R.C. and removed a firearm magazine and bullets from his desk drawer.  While loading bullets into the magazine, Iza told Victim R.C. that he hates when people steal from him and made implied threats about killing Victim R.C.

Defendant then saw LASD Deputy 6 unholster his firearm and draw his weapon to a low-ready position with the muzzle of the firearm angled at the ground in the direction of Victim R.C.  LASD Deputy 6

told Victim R.C. to take his "fucking hands out of his pockets" and walked toward Victim R.C. with his firearm at the low-ready position. LASD Deputy 6 then took Victim R.C.'s phone and handed the phone to Iza.  Defendant patted down Victim R.C. and searched Victim R.C.'s bags.

After LASD Deputy 6 drew his firearm and took the phone, Victim R.C. provided the passcode for his phone.  Iza accessed the phone and demanded that Victim R.C. wire $25,000 from Victim R.C.'s bank account to a bank account that Iza controlled.  After the bank transfer occurred, defendant and LASD Deputy 6 escorted Victim R.C. out of the mansion.  Victim R.C. asked for his phone back, and defendant told Victim R.C. to leave without the phone.  At some point during the incident, defendant told Victim R.C. that people get killed over this type of dispute.

After the incident, Iza hired Saavedra & Associates to provide private security and made substantial payments to Saavedra and his employees, including defendant.  Iza made those payments through cash payments and wire transfers.  Private security guards working for Saavedra & Associates accompanied Iza 24 hours per day, seven days a week during which they would often carry firearms and/or brandish their badges while accompanying Iza.  Defendant and LASD Deputy 6 each earned $1,400 total for their shifts during the August 14, 2021 party and the August 16, 2021 incident with Victim R.C.  Because defendant and LASD Deputy 6 helped secure a long-term contract, Saavedra & Associates paid defendant and LASD Deputy 6 approximately 10 percent of the total profits earned for the first month of the contract.

***Defendant Facilitates Traffic Stop and Arrest of Victim R.C.***

Approximately three weeks after the incident with Victim R.C. in Iza's office, defendant learned from Iza that Victim R.C. had an outstanding warrant for his arrest. Defendant spoke in person with Iza and LASD Deputy 2 about the idea to conduct a traffic stop to arrest Victim R.C. Days later, defendant received a phone call from LASD Deputy 2. During the phone call, LASD Deputy 2 told defendant that Victim R.C. was going to be in the Lakewood area and asked whether defendant would conduct a traffic stop and arrest Victim R.C. LASD Deputy 2 informed defendant that the driver of the car would be Co-Conspirator 2, and that Co-Conspirator 2 believed there were drugs inside the vehicle.

On September 27, 2021, defendant called LASD Deputy 4, who was working patrol in the Lakewood area. Defendant told LASD Deputy 4 that an individual was going to be in the Lakewood area with an outstanding warrant and that there were likely drugs in the car. LASD Deputy 4 confirmed that he would conduct the traffic stop. Defendant told LASD Deputy 4 to contact LASD Deputy 2 for more information about the traffic stop and provided LASD Deputy 2's telephone number. Defendant did not tell LASD Deputy 4 that the traffic stop was related to Iza, or that the person to be arrested was Victim R.C., a person who defendant knew and had seen held at gunpoint weeks prior. Defendant did not tell LASD Deputy 4 that LASD Deputy 2 was a helicopter pilot and not a detective. Defendant also did not tell LASD Deputy 4 that both he and LASD Deputy 2 were receiving cash payments for their work for Iza, who had a personal dispute with the person to be arrested.

13

On September 27, 2021, LASD Deputy 4 conducted the traffic stop, located drugs in the vehicle, and arrested Victim R.C.  After the traffic stop and arrest occurred, defendant received a message from LASD Deputy 2 thanking defendant for facilitating the traffic stop and stating that "the kid enjoyed it."  When defendant asked LASD Deputy 2 what he meant by this, LASD Deputy 2 explained that he brought Iza to the scene of the arrest to watch Victim R.C. handcuffed and placed in the police patrol vehicle.

***Defendant Subscribed to a False Tax Return***

Defendant provided security-related services and received significant income during the year 2021 that defendant failed to declare on his individual tax return.  Specifically, during 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant received unreported income of at least $40,500. On or about February 22, 2022, in Orange County, within the Central District of California, and elsewhere, defendant made and signed a U.S. Individual Income Tax Return, Form 1040, for the calendar year 2021, that he knew contained false information as to material matters; the return contained a written declaration that the tax returns were being signed subject to the penalties of perjury; and defendant intentionally and voluntarily violated his known duty to obey federal tax laws.  As a result of such additional taxable income, there was additional income tax of approximately $11,000 due and owing to the United States of America for the calendar year 2021.

## SENTENCING FACTORS

17.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures

under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

18.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

**Count One (18 U.S.C. § 241)**

| | | |
|---|---|---|
| Base Offense Level: | 12 | U.S.S.G. § 2H1.1(a)(2) |
| Defendant was a public official at the time of the offense; offense was committed under color of law: | 6 | U.S.S.G. § 2H1.1(b)(1) |

**Count Two (26 U.S.C. § 7206(1))**

| | | |
|---|---|---|
| Base Offense Level: | 10 | U.S.S.G. § 2T4.1(C) |

**Combined Offense Level (U.S.S.G. § 3D1.4)**

Count One Group (offense level 18) = 1 unit

Count Two Group (offense level 10) = 1/2 unit

Total units: 1.5

Combined offense level:    19 (offense level 18 plus 1 level)

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

15

19. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

20. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

WAIVER OF CONSTITUTIONAL RIGHTS

21. Defendant understands that by pleading guilty, defendant gives up the following rights:

a. The right to persist in a plea of not guilty.

b. The right to a speedy and public trial by jury.

c. The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e. The right to confront and cross-examine witnesses against defendant.

f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

16

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTION

22.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the Factual Basis provided herein is insufficient to support defendant's pleas of guilty.

WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

23.  Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 27 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) the amount and terms of any restitution order; (e) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18

17

U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

24.  Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, that newly discovered evidence purportedly supports defendant's innocence, and any and all claims that the Factual Basis provided herein is insufficient to support defendant's pleas of guilty.

25.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 21 months, the USAO gives up its right to appeal any portion of the sentence.

RESULT OF WITHDRAWAL OF GUILTY PLEA

26.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then the USAO will be relieved of all of its obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

27. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

28. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
OFFICE NOT PARTIES

29. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to the Factual Basis or sentencing factors.

30. Defendant understands that both defendant and the USAO are free to: (a) supplement the Factual Basis by supplying relevant

19

information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 18 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the agreed upon Factual Basis in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the Factual Basis agreed to in this agreement.

31.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

32.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional

20

promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

### PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

33. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

BILAL A. ESSAYLI
United States Attorney

_____                    July 8, 2025
MAXWELL COLL                                          _____
Assistant United States Attorney                     Date

_____                    06/22/25
CHRISTOPHER MICHAEL CADMAN                            _____
Defendant                                            Date

_____                    6-25-2025
MARK FREDRICK                                         _____
Attorney for Defendant Christopher                   Date
Michael Cadman

21

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____     06/22/25
CHRISTOPHER MICHAEL CADMAN        Date
Defendant

22

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Christopher Michael Cadman's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____          6-25-2025
MARK FREDRICK                             _____
Attorney for Defendant Christopher        Date
Michael Cadman

23

# EXHIBIT A TO PLEA AGREEMENT

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>CHRISTOPHER MICHAEL CADMAN,<br><br>　　　　Defendant. | No.<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 241: Conspiracy Against Rights; 26 U.S.C. § 7206(1): Making and Subscribing to a False Tax Return; 18 U.S.C. § 924(d)(1), 26 U.S.C. § 7301 and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The United States Attorney charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.　The Los Angeles County Sheriff's Department ("LASD") was a law enforcement agency within the Central District of California. Among other responsibilities, the LASD provided municipal police services within Los Angeles County, California, through its thousands of sworn deputies.

2.    Defendant CHRISTOPHER MICHAEL CADMAN, LASD Deputy 2, LASD Deputy 4, and LASD Deputy 6 were sworn law enforcement officers employed by the LASD.  As LASD deputies, defendant CADMAN, LASD Deputy 2, LASD Deputy 4, and LASD Deputy 6 were subject to an oath of duty and rules of conduct.  This oath and these rules prohibited LASD personnel from using their law enforcement status and related equipment for personal use or for non-legitimate law enforcement purposes.

3.    Defendant CADMAN was a deputy assigned to LASD's Lakewood Station.  Defendant CADMAN also served as a task force officer assigned to the Los Angeles IMPACT Task Force.

4.    Defendant CADMAN knew and understood that the Constitution and laws of the United States protect the right to be free from unreasonable searches and seizures and the right to be free from deprivation of property without due process of law by one acting under color of law.

5.    Eric Chase Saavedra ("Saavedra") owned and operated a company called Saavedra & Associates LLC ("Saavedra & Associates") that provided private security services for clients and often employed active LASD deputies and law enforcement officers. Defendant CADMAN worked for Saavedra & Associates as a private security guard and received cash payments in return for his services.

6.    Adam Iza, also known as ("aka") "The Godfather," aka "Ahmed Faiq," aka "Diego," aka "Diego Facebook," aka "Tony Brambilla," aka "Leo" ("Iza"), was engaged in fraudulent marketing and cryptocurrency schemes and resided in Los Angeles County and Orange County, California, within the Central District of California.

2

7.    Iza hired Saavedra & Associates to provide private security and made substantial payments to Saavedra and his employees, including defendant CADMAN.

8.    Defendant CADMAN derived substantial gross income from security-related services, including for Iza, and used his personal bank account to receive such income.

9.    The IRS was an agency of the United States Department of Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States.

10.    IRS Form 1040, U.S. Individual Income Tax Return ("Form 1040"), was a form generally used by individual U.S. taxpayers to file annual income tax returns.

11.    These Introductory Allegations are incorporated into each count of this Information.

3

COUNT ONE

[18 U.S.C. § 241]

A.   OBJECT OF THE CONSPIRACY

12.   Beginning on a date unknown and continuing through in or around December 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant CHRISTOPHER MICHAEL CADMAN, and others known and unknown to the United States Attorney, conspired and agreed with each other to knowingly and intentionally injure, oppress, threaten, and intimidate a person of the State of California, namely, Victim R.C., in the free exercise and enjoyment of rights secured to them by the Constitution and laws of the United States, that is, the right to be free from unreasonable searches and seizures and the right to be free from deprivation of property without due process of law by one acting under color of law.

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

13.   The object of the conspiracy was to be accomplished, in substance, as follows:

a.   Iza would hire active LASD deputies, including defendant CADMAN, LASD Deputy 2, and LASD Deputy 6, through Saavedra and/or Saavedra & Associates, to act as Iza's personal bodyguards and/or advisors, accompanying him 24 hours per day and seven days per week.

b.   Iza would pay large sums of money for the LASD deputies' services, including through cash payments and wire transfers to Saavedra and/or Saavedra & Associates.

c.   The LASD deputies often would carry firearms and/or brandish their LASD badges while accompanying Iza.

4

d.    Iza would inform the LASD deputies about people with whom he had personal and monetary disputes, and obtain the LASD deputies' assistance in gathering information about these individuals; obtaining property from these individuals; and/or retaliating against these individuals.

e.    Iza, the LASD deputies, and their associates would intimidate, harass, and threaten individuals identified by Iza, including by threatening violence and by causing the arrest of these individuals, including by using their official law enforcement capacities.

C.    OVERT ACTS

On or about the following dates, in furtherance of the conspiracy, and to accomplish the object of the conspiracy, defendant, LASD Deputy 2, LASD Deputy 6, Saavedra, and Iza, and others known and unknown to the United States Attorney, committed and caused to be committed various overt acts within the Central District of California, and elsewhere, including the following:

Overt Act No. 1:    In or around August 2021, Iza engaged defendant CADMAN and LASD Deputy 6 to provide security services for a party at his mansion in the Bel Air neighborhood of Los Angeles.

Overt Act No. 2:    On August 14, 2021, defendant CADMAN and LASD Deputy 6 provided private security at the event at Iza's mansion.

Overt Act No. 3:    On August 15, 2021, Iza told defendant CADMAN and LASD Deputy 6 that he was angry with Victim R.C. because the party did not go as Iza had planned.

Overt Act No. 4:    On August 15, 2021, defendant CADMAN told Iza that vendors were still owed money for the party, and Iza

expressed his anger with Victim R.C., who Iza believed owed the money.

Overt Act No. 5:    On August 16, 2021, Iza messaged defendant CADMAN asking if he would return to the mansion to work another shift of private security.  In the message, Iza told defendant CADMAN that Victim R.C. was going to return to Iza's residence that day.

Overt Act No. 6:    On August 16, 2021, Iza discussed with defendant CADMAN and LASD Deputy 6 that Victim R.C. was on his way to the residence.  Based on this conversation, defendant CADMAN understood that Iza was going to put Victim R.C. on the spot about the money that Iza believed Victim R.C. owed and that Iza was going to apply pressure on Victim R.C. when he arrived.

Overt Act No. 7:    On August 16, 2021, defendant CADMAN and LASD Deputy 6 escorted Victim R.C. to Iza's office and closed the door behind them.  Inside the office, Iza asked Victim R.C. how much money Iza was going to get back from Victim R.C.  Iza raised his voice at Victim R.C. and removed a firearm magazine and bullets from his desk drawer.

Overt Act No. 8:    On August 16, 2021, LASD Deputy 6 unholstered his firearm and drew his weapon to a low-ready position with the muzzle of the firearm angled at the ground in the direction of Victim R.C.  LASD Deputy 6 told Victim R.C. to take his "fucking hands out of his pockets" and walked toward Victim R.C. with his firearm at the low-ready position.

Overt Act No. 9:    On August 16, 2021, LASD Deputy 6 took Victim R.C.'s phone from Victim R.C. and handed it to Iza.

Overt Act No. 10:    On August 16, 2021, defendant CADMAN patted down Victim R.C. and searched Victim R.C.'s bags.

6

Overt Act No. 11:   On August 16, 2021, Iza accessed Victim R.C.'s phone and demanded that Victim R.C. wire $25,000 from Victim R.C.'s bank account to a bank account that Iza controlled.

Overt Act No. 12:   On August 16, 2021, after the bank transfer occurred, defendant CADMAN and LASD Deputy 6 escorted Victim R.C. out of the mansion without Victim R.C.'s phone.

Overt Act No. 13:   In August 2021, Iza paid defendant CADMAN and LASD Deputy 6 each $1,400 for their shifts during the August 14, 2021 party and the August 16, 2021 incident with Victim R.C.

Overt Act No. 14:   In August 2021, defendant CADMAN and LASD Deputy 6 each earned 10 percent of the total profits earned for the first month of the private security contract with Iza.

Overt Act No. 15:   In September 2021, defendant CADMAN spoke in person with Iza and LASD Deputy 2 about the idea of conducting a traffic stop to arrest Victim R.C.

Overt Act No. 16:   In September 2021, LASD Deputy 2 called defendant CADMAN, told defendant CADMAN that Victim R.C. was going to be in the Lakewood area, and asked whether defendant CADMAN would conduct a traffic stop and arrest Victim R.C.  LASD Deputy 2 informed defendant CADMAN who the car's driver would be and that the driver believed there were drugs inside the vehicle.

Overt Act No. 17:   On September 27, 2021, defendant CADMAN called LASD Deputy 4, who was working in the Lakewood area. Defendant CADMAN told LASD Deputy 4 that an individual was going to be in the Lakewood area with an outstanding warrant and that there were likely drugs in the car.  Defendant CADMAN asked LASD Deputy 4 to conduct the traffic stop and arrest Victim R.C.

Overt Act No. 18:    On September 27, 2021, defendant CADMAN told LASD Deputy 4 to contact LASD Deputy 2 for more information about the traffic stop and provided LASD Deputy 2's telephone number.

Overt Act No. 19:    On September 27, 2021, LASD Deputy 4 conducted the traffic stop, located drugs in the vehicle, and arrested Victim R.C.

Overt Act No. 20:    On September 27, 2021, LASD Deputy 2 messaged defendant CADMAN thanking him for facilitating the traffic stop and stating that "the kid enjoyed it."  When defendant CADMAN asked LASD Deputy 2 what he meant by this, LASD Deputy 2 explained that he brought Iza to the scene of the arrest to watch Victim R.C. handcuffed and placed in the patrol vehicle.

COUNT TWO

[26 U.S.C. § 7206(1)]

On or about February 22, 2022, in Orange County, within the Central District of California, and elsewhere, defendant CHRISTOPHER MICHAEL CADMAN willfully made and subscribed to a materially false U.S. Individual Income Tax Return, Form 1040, for the calendar year 2021, which was verified by a written declaration from defendant CADMAN that it was made under the penalties of perjury, and which defendant CADMAN filed or caused to be filed with the Internal Revenue Service, knowing the tax return was not true and correct as to every material matter contained therein, in that defendant CADMAN knew that he failed to report on the tax return approximately $40,500 in income.

9

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count One of this Information.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)  All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the convicted defendant shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[26 U.S.C. § 7301 and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 26, United States Code, 7301, and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count Two of this Information.

2.    The defendant, if so convicted, shall forfeit to the United States of America the following:

a.    Any property sold or removed by the defendant in fraud of the internal revenue laws, or with design to avoid payment of such tax, or which was removed, deposited, or concealed, with intent to defraud the United States of such tax or any part thereof;

b.    All property manufactured into property of a kind subject to tax for the purpose of selling such taxable property in fraud of the internal revenue laws, or with design to evade the payment of such tax;

c.    All property whatsoever, in the place or building, or any yard or enclosure, where the property described in subsection (a) or (b) is found, or which is intended to be used in the making of property described in subsection (a), with intent to defraud the United States of tax or any part thereof, on the property described in subsection (a);

d.    All property used as a container for, or which shall have contained, property described in subsection (a) or (b);

e.    Any property (including aircraft, vehicles, vessels, or draft animals) used to transport or for the deposit or concealment

11

of property described in subsection (a) or (b), or any property used to transport or for the deposit or concealment of property which is intended to be used in the making or packaging of property described in subsection (a); and

f.    To the extent that such property is not available for forfeiture, a sum of money equal to the total value of the property described in this paragraph.

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

///

///

12

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

BILAL A. ESSAYLI
United States Attorney

CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division

THOMAS F. RYBARCZYK
Assistant United States Attorney
Acting Chief, Public Corruption
and Civil Rights Section

MAXWELL COLL
Assistant United States Attorney
Cyber & Intellectual Property
Crimes Section

13